IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STUART HIGGINBOTHAM         :

    v.                        :   Civil Action No. DKC-18-1067

                                  :

CPL. JEFFREY BRAUER          :

                                  :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil rights case is Defendant's motion to dismiss counts II, III and IV. (ECF No. 5). The issues are fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the reasons that follow, Defendants' motion will be granted.

**I.  Background**

Defendant ("Defendant" or "Cpl. Brauer") seeks dismissal of the state law claims in counts II (battery), III (false arrest), and IV (false imprisonment) of Plaintiff's ("Higginbotham" or "Plaintiff") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that Plaintiff failed timely to provide notice under Maryland's Local Government Tort Claims Act (the "LGTCA"). Under Md. Code. Ann., Cts. & Jud. Proc. § 5-304(b) (2015): "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the

injury."[1]  Plaintiff alleges that Defendant made an unreasonable seizure of Plaintiff on May 14, 2015.

"It is a longstanding principle of Maryland jurisprudence that the LGTCA notice provision is a condition precedent to maintaining an action directly against a local government or its employees."  *Hansen v. City of Laurel*, 420 Md. 670, 682 (2011). Satisfaction of the notice requirement must be pled in the complaint.  *Id.* at 684; *Renn v. Bd. of Comm'rs of Charles Cty., MD*, 352 F.Supp.2d 599, 602 (D.Md. 2005) ("Maryland courts have consistently held that . . . compliance with the [LGTCA's] notice provision should be alleged in the complaint as a substantive element of the cause of action.").  Here, Plaintiff alleges:

---

[1]  Effective October 1, 2015, the LGTCA was amended to increase the notice period from 180 days to 1 year.  *See* 2015 Md. Laws, Ch. 131 (H.B. 113).  Section 2 explicitly states:  "this Act shall be construed to apply only prospectively and may not be applied or interpreted to have any effect on or application to any cause of action arising before the effective date of this Act."  The injury here allegedly occurred on May 14, 2015 and accrued before the effective date of the amendment.  Thus, the 180-day notice period applies in this case, not the 1-year notice period.  *See Heidary v. Paradise Point LLC*, No. 2000, SEPT. TERM, 2016, 2018 WL 1341909, at *6 (Md.Ct.Spec.App. Mar. 15, 2018) (finding that the 180-day notice period applies to a claim that arose in July 2014 and that the LGTCA amendment should only apply prospectively); *Stone v. Town of Cheverly*, GJH-17-353, 2017 WL 3887857, at *8 n.11 (D.Md. Sept. 5, 2017), *reconsideration denied in part*, 2018 WL 2725443 (D.Md. June 5, 2018) (citing 2015 Md. Laws, Ch. 131 (H.B. 113)) (the 2015 amendment "only applied prospectively and thus did not affect causes of actions . . . which accrued prior to the bill's effective date").  Because the notice was sent more than one year after the events, the result would be the same even if the one year notice period applied.

2

> On or about July 19, 2016, Plaintiff Higginbotham acted in a *pro se* capacity and provided notice of his claims in this action to the Anne Arundel County Office of Law in a manner that substantially complied with Maryland's Local Government Tort Claims Act. On July 28, 2016, Senior County Attorney Jay H. Creech responded by correspondence in which he indicated that a copy of Plaintiff's "notice of claim ha[d] been forwarded to the Risk Management Division of the Anne Arundel County Office of Central Services" and that "[a]n investigation would be conducted . . ." On August 16, 2016, Anne Arundel County Claims Adjuster Ronald C. Brigerman, Jr. advised Plaintiff Higginbotham that the investigation concerning his claim (Claim No. 16-1404) had been complete, and further indicated that the Anne Arundel County was denying liability.

(ECF No. 1 ¶ 5).

While not contesting that his notice was filed well past the LGTCA deadline, Plaintiff maintains that: (1) his efforts constitute substantial compliance under the LGTCA because his late notice did not "impede[] Anne Arundel County's ability to investigate" and Defendant has not suffered any prejudice, and thus "the purpose of the statute has essentially been fulfilled;" and (2) good cause exists to forgive his failure to comply strictly with the LGTCA's notice provision because Plaintiff is an out-of-state resident who initially attempted to act without the assistance of counsel. (ECF No. 7, at pp. 4-5).

### A.  "Altercation" on May 14, 2015

Plaintiff Stuart Higginbotham, a Delaware citizen (ECF No. 1 ¶ 6), was at the Mall following a work assignment on May 14, 2015

(*Id.* ¶ 8). At about 2:50, he finished lunch and walked around the Mall. (*Id.* ¶ 9). He encountered an altercation between two individuals (Calik Smith and Morgan Branch) and several mall security personnel and Anne Arundel County Police Department officers, including Defendant Jeffrey Brauer. (*Id.* ¶¶ 10-12). He did not know any person in this altercation. (*Id.* ¶ 11.).

As Plaintiff observed the scene, he noticed that Ms. Branch looked distraught and was "pull[ed]" by mall security. (*Id.* ¶ 13). He allegedly witnessed Cpl. Brauer grab Ms. Branch, place her in a chokehold, and "forcibly propel [her] to the ground," causing her face to "violently contact[] the mall floor." (*Id.*).

Plaintiff Higginbotham "commented" to Cpl. Brauer that the force directed at Ms. Branch was excessive. (*Id.* ¶ 14). Cpl. Brauer allegedly yelled at Plaintiff to "shut the fuck up," approached him, called him "ignorant," and then struck him to the ground. (*Id.* ¶¶ 14-15). Cpl. Brauer allegedly pushed his knee into Plaintiff's back, manipulated his arms back, and placed him in handcuffs. (*Id.* ¶ 15). Plaintiff suffered injuries to his right rotator cuff and nerves in his hands. (*Id.* ¶ 16). He was then arrested, transported to the Anne Arundel County Police Department, and charged with disorderly conduct. (*Id.* ¶¶ 21-22). He claims that aside from commenting on Cpl. Brauer's degree of force, he did not interfere with Cpl. Brauer's detention of Ms. Branch. (*Id.* ¶ 14).

4

## B. Plaintiff's Actions After May 14, 2015

"Shortly after" the altercation at the Mall, Plaintiff "attempted to" initiate an Internal Affairs complaint against Defendant Brauer with the Anne Arundel County Police Department Professional Standards Section, although he does not explain what this "attempt" entailed and when it occurred. (*Id.* ¶ 23).

On November 11, 2015, acting *pro se*, Plaintiff issued a subpoena in his criminal case to direct the Mall to produce video surveillance. (*Id.* ¶ 24). On November 23, 2015, counsel for the Mall advised him that "the video tape [he] request[ed] in [his] Subpoena was turned over to the Anne Arundel County Police Department some months ago." (*Id.*). On April 17, 2017, the District Court of Maryland for Anne Arundel County dismissed his criminal case. (*Id.* ¶ 26).

Plaintiff alleges that two separate investigations were conducted in response to the altercation. First, on July 19, 2016, Plaintiff submitted a written complaint to the Anne Arundel County Police Department Professional Standards Section. (*Id.* ¶ 25). On October 3, 2016, Anne Arundel County Detective Erin Brandt sent Plaintiff some paperwork to file a complaint of excessive force. (*Id.*). Plaintiff does not allege that he filled out this paperwork, but states that "[t]he ensuing investigation was closed on about January 27, 2017 after [his] claims of excessive force were found to be '[s]ustained.'" (*Id.*). Second, as detailed

above, he alleges that on the same day, July 19, 2016, he "provided notice of his claims" to the "Anne Arundel County Office of Law in a manner that substantially complied with Maryland's Local Government Tort Claims Act," and that after his notice of claim had been forwarded, an investigation was completed and Anne Arundel County denied liability. (*Id.* ¶ 5).

## II. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quotation omitted). "A court must consider all well-pleaded allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe factual allegations in the light most favorable to the plaintiff, *see Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). Nevertheless, a court is not required to accept as true "a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

When deciding a motion to dismiss under Rule 12(b)(6), courts may only consider the facts contained in plaintiff's complaint. When "matters outside the pleadings are presented to and not

6

excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12; *see Talbot v. U.S. Foodservice, Inc.*, 191 F.Supp.2d 637, 639 (D.Md. 2002) (treating motion to dismiss as motion for summary judgment where the court had to consider "two items of evidence extrinsic to the pleadings"). However, an exception to the general rule is made for documents which are referred to in the Complaint and upon which Plaintiff relies in bringing the action. *Biospherics, Inc. v. Forbes, Inc.*, 989 F.Supp. 748, 750 (D.Md. 1997). Here, Plaintiff refers to the LGTCA notice in his Complaint, so this document can be relied on in adjudicating a motion to dismiss.

For the reasons that follow, Plaintiff's arguments are unavailing and the state law claims will be dismissed.

**III. Analysis**

Defendant argues that Plaintiff failed to provide the requisite notice under the LGTCA.[2] Plaintiff, in contrast, while conceding that the late notice provided "was not in strict compliance with the LGTCA's notice provision" (ECF No. 7, at p.

---

[2] The parties assumed that the newer, one year, deadline applies. They also appear to agree that the state law causes of action arose on May 14, 2015.

7

2), nevertheless argues that the state law claims should not be dismissed because (1) the "good cause" exception in MD. CODE ANN., Cts. & Jud. Proc. § 5-304(d) applies, and (2) he "substantially complied" with the notice requirement.

**A.    Applicability of the Section 5-304(d) Exception**

MD. CODE ANN., Cts. & Jud. Proc. § 5-304(d) ("Section 5-304(d)") provides:

> Notwithstanding the other provisions of this section, unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given.

Under this exception, Plaintiff has the burden to show good cause for lack of strict compliance. *See Rounds v. Maryland-Nat. Capital Park & Planning Comm'n*, 441 Md. 621, 645 (2015) ("Where a plaintiff fails to comply with the notice requirement, it is the plaintiff's burden to demonstrate 'good cause.'"). The test for whether good cause exists is "whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Heron v. Strader*, 361 Md. 258, 271 (2000).

Maryland courts have considered several factors to evaluate "good cause" in the LGTCA context, including:

> [1] excusable neglect or mistake (generally determined in reference to a reasonably prudent person standard),

8

>     [2] serious physical or mental injury and/or location out-of-state,
>     [3] the inability to retain counsel in cases involving complex litigation, . . .
>     [4] ignorance of the statutory notice requirement [,] or
>     [5] misleading representations made by [a] representative of the local government.

*Wilbon v. Hunsicker*, 172 Md.App. 181, 205-06 (2006) (internal quotation marks omitted); *see also Heron*, 361 Md. at 272. However, "[i]gnorance" of the law alone has been rejected as a cognizable factor for showing good cause. *Wilbon*, 172 Md.App. at 206 n.15; *see also Bibum v. Prince George's Cty.,* 85 F.Supp.2d 557, 565–66 (D.Md. 2000) (the fact that Plaintiff "did not know about the formal notice requirement of the LGTCA does not constitute good cause for his failure to comply."); *Stone v. Town of Cheverly*, GJH-17-353, 2017 WL 3887857, at *8 ("ignorance of the LGTCA notice requirement does not excuse formal compliance."); *Gower v. Smith*, No. 833, SEPT.TERM, 2017, 2018 WL 2331995, at *12 n.4 (Md.Ct.Spec.App. May 23, 2018) ("ignorance of the law *alone* may not constitute good cause") (emphasis in original).

Even assuming that Plaintiff's opposition brief (ECF No. 7) may be treated as the requisite "motion" to invoke the Section 5-304(d) exception, Plaintiff has not met his burden of showing good cause. There is no allegation of physical or mental injury, inability to retain counsel, misleading representations made by

9

the local government, or ignorance of the statutory notice requirement.

The only "good cause" factor that arguably cuts in Plaintiff's favor is that Plaintiff is an out-of-state litigant. This factor, however, is not determinative. Although courts have considered whether there is "serious physical or mental injury and/or location out-of-state," *Wilbon*, 172 Md.App. at 206, this factor is meant to account for claimants who are hospitalized out-of-state due to their injuries, not for claimants who are merely out-of-state residents. *See*, *e.g.*, *Heron*, 361 Md. at 272 (citing approvingly *Lamb v. Glob. Landfill Reclaiming*, 111 N.J. 134, 147–48 (1988) (collecting cases on this exception, including cases involving "grievous injuries requiring out of state hospitalization for ninety days and confinement to home for one year," "out-of-state resident suffering from embolism near death," "quadriplegic hospitalized outside of state," and "several months hospitalization out of state")). There is no authority that out-of-state litigants do not need to meet Maryland procedural requirements solely because they reside in a different state. Moreover, the facts that Plaintiff is a Delaware resident and he needed to find an attorney knowledgeable of Maryland state law cannot justify a delay of 432 days, more than twice the 180 days

allowed by the LGTCA in May of 2015.[3] A reasonably prudent out-of-state plaintiff injured in Maryland would be even more likely to seek out an attorney who specializes in Maryland litigation. Further, Plaintiff was present in Maryland during his state court criminal case and took various legal actions within the state, which are discussed in greater detail below, thus ruling out any inability to access local resources.

The remaining possible "good cause" factor that Plaintiff may rely on is excusable neglect or mistake. This factor, however, does not justify a departure from the LGTCA's notice requirement. The standard of diligence required from Plaintiff is that which "an ordinarily prudent person would have exercised under the same or similar circumstances." *Wilbon*, 172 Md.App. at 205. Plaintiff took several *pro se* actions in his state court criminal case, including filing a subpoena to request the video evidence of the incident. (ECF No. 1 ¶ 24). He also allegedly "attempted to" initiate an Internal Affairs complaint against Defendant Brauer "shortly after" the altercation at the Mall. (*Id.* ¶ 23). These actions show that Plaintiff was not ignorant of or confused about his legal rights, but that he knew of his alleged injuries. A

---

[3] Plaintiff explains that his July 19, 2016 notification was filed 1 year, 1 month, and 14 days after the injury. (ECF No. 7, at p. 2 n.1). However, there are 432 days between May 14, 2015 and July 19, 2016, constituting 1 year, 2 months, and 5 days.

reasonably prudent claimant in similar circumstances would have consulted an attorney about pursuing a civil claim so that he could meet all pre-filing requirements. *See Stone*, 2017 WL 3887857, at *8 (citing *Bibum*, 85 F.Supp.2d at 565-66) ("Plaintiffs should have investigated [the LGTCA requirements] on their own or promptly sought an attorney.").

Considering all of the above "good cause" factors together does not tip the scale in Plaintiff's favor. Accordingly, Plaintiff may not rely on the Section 5-304(d) exception to the LGTCA notice requirement.[4]

### B. Applicability of the "Substantial Compliance" Doctrine

Plaintiff also argues that he should be afforded leniency based on his substantial compliance with the notice requirement. A plaintiff "substantially complies with the LGTCA notice requirement where: (1) the plaintiff makes 'some effort to provide the requisite notice'; (2) the plaintiff does 'in fact' give some kind of notice; (3) the notice 'provides . . . requisite and timely notice of facts and circumstances giving rise to the claim'; and

---

[4] A prejudice analysis is not required because a defendant's "burden to show prejudice does not arise until a plaintiff establishes 'good cause' to justify the failure to comply with the notice requirement." *Curtis v. Pracht*, 202 F.Supp.2d 406, 414 (D.Md. 2002) (citing *Martino v. Bell*, 40 F.Supp.2d 719, 720 (D.Md. 1999); *Downey v. Collins*, 866 F.Supp. 887, 889–90 (D.Md. 1994)); *see also Huggins v. Prince George's County Md.*, 683 F.3d 525 (4th Cir. 2012).

12

(4) the notice fulfills the LGTCA's purpose." *Ellis v. Hous. Auth. of Baltimore City*, 436 Md. 331, 342–43 (2013). The LGTCA's purpose is:

> [T]o protect the municipalities and counties of the State from meretricious claimants and exaggerated claims by providing a mechanism whereby the municipality or county would be apprised of its possible liability at a time when it could conduct its own investigation, *i.e.*, while the evidence was still fresh and the recollection of the witnesses was undiminished by time, "sufficient to ascertain the character and extent of the injury and its responsibility in connection with it."

*Williams v. Maynard*, 359 Md. 379, 389–90 (2000).

Plaintiff argues that he made "some" effort to provide the requisite notice to the County by sending the July 19, 2016 letter to Anne Arundel County Office of Law, which constituted notice "in fact." *Ellis*, 436 Md. at 342. However, the letter does not provide timely notice of facts and circumstances giving rise to the claim, nor does it fulfill the LGTCA's purpose of allowing "the municipality or county [to] be apprised of its possible liability at a time when it could conduct its own investigation." *Williams*, 359 Md. at 389–90. Because the letter was delivered 252 days past the applicable LGTCA deadline, the County could not use evidence while it "was still fresh" or rely on "the recollection of the witnesses [that were] undiminished by time." *Id.* at 90.

The substantial compliance doctrine requires "timely notice" of the facts and circumstances of the injury. *Ellis*, 436 Md. at

13

343. Maryland courts have found substantial compliance when a written notice of a claim was mailed on the 180th day but received on the 181st day following injury, *see Grubbs v. Prince George's Cty.*, 267 Md. 318, 325 (1972), but there is no authority allowing substantial compliance for notices sent as late as 432 days after injury. In fact, a Maryland appeals court held that a plaintiff may not rely on the substantial compliance doctrine when he sent a letter "between a month and six weeks beyond the 180-day statutory period." *Wilbon*, 172 Md.App. at 200. The court agreed with defendants that "although 'a claimant may comply substantially with a notice requirement by giving notice to a person not specified in the statute or by regular rather than certified mail, the courts have not held that a claimant may submit the notice beyond the time for giving such notice.'" *Id.* at 200.

This result is consistent with the policy of the substantial compliance doctrine, which is meant to provide leniency for claimants who attempt to give notice but "not necessarily in a manner technically compliant with all of the terms of the statute." *Faulk v. Ewing*, 371 Md. 284, 299 (2002); *see id.* at 306–07 (finding substantial compliance even though the notice did not "include an envelope or other indicia of a postmark by the United States Postal Service," and did not appear to be "sent via certified mail[.]"); *Jackson v. Bd. of Cty. Comm'rs of Anne Arundel Cty.*, 233 Md. 164, 168 (1963) (finding substantial compliance when claimant "did

14

not . . . deliver the notice in person or cause it to be delivered by registered mail"). The doctrine is not meant, however, to provide an escape for claimants who provide clearly untimely notice, in this case, 252 days after the applicable deadline. *Wilbon*, 172 Md.App. at 200. Accordingly, Plaintiff did not substantially comply with the notice statute.

**IV. CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss, counts II, III and IV, will be granted. A separate order will follow.

                                                          /s/
DEBORAH K. CHASANOW
United States District Judge