IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STUART HIGGINBOTHAM           :

                           :

    v.                     :   Civil Action No. DKC 18-1067

                           :

CORPORAL J. BRAUER[1]          :

                           :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil rights case is the motion for summary judgment filed by Corporal J. Bauer ("Defendant"). (ECF No. 18). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be denied.

**I.   Background[2]**

This action arises out of a citizen's observation of a police officer effectuating an arrest on a third party.

On May 14, 2015, Stuart Higginbotham ("Plaintiff") was walking through a shopping mall. As he walked, he noticed "a bunch of people and a crowd . . . forming" and saw a "security guard

---

[1] The caption of the complaint identifies the defendant as "Brauer" while elsewhere he is identified as "Bauer." The clerk will be instructed to amend the docket to reflect the correct spelling of Defendant's last name.

[2] The facts outlined here are presented in the light most favorable to Plaintiff, the nonmoving party.

yelling at a young lady, pointing at her." (ECF No. 18-2, at 6). The young lady was Morgan Branch, a Black teenager. Corporal Jeffrey Bauer ("Defendant"), an Anne Arundel County police officer, and the security guard spoke, and Defendant also pointed to Ms. Branch. (*Id.*). Plaintiff observed Defendant "[run] up behind [Ms. Branch] and then jerk[] her arm[.]" (*Id.*). Defendant "proceeded to put [Ms. Branch] in a chokehold, pick her up[,] and body slam her face, hitting the left side of the face into the tile floor." (*Id.*). Defendant then "put his knee in [Ms. Branch's] back and put handcuffs on her." (*Id.*).

Plaintiff interjected: "[T]hat's excessive. That's somebody's daughter. That's not necessary." (ECF No. 18-2, at 6). Other people in the crowd, including Ms. Branch's boyfriend, also objected to Defendant's actions. (*Id.*, at 7). Defendant looked directly at Plaintiff and responded: "shut the fuck up." (*Id.*). Plaintiff countered: "don't cuss at me, what you did to her is not right." (*Id.*). Defendant replied: "shut the fuck up, get out of the mall." (*Id.*). The security guard then also ordered Plaintiff to leave the mall and stated that he was banned (from that point forward). (*Id.*, at 9). The crowd had not dispersed, and a white woman commented that Plaintiff should have seen what [Ms. Branch had done]." (*Id.*). Plaintiff commented to Defendant that if Ms. Branch "was white [Defendant] wouldn't have done that." (*Id.*). Defendant again told Plaintiff to "get out, leave the

mall." (*Id.*).  Plaintiff replied that he would wait for Ms.
Branch's mother.  Defendant then arrested or handcuffed Ms. Branch
while Plaintiff continued to observe.

    A female officer, Corporal Katherine Beall, then approached
Plaintiff.   Defendant   instructed   Officer   Beall   to   "detain"
Plaintiff and Officer Beall asked Plaintiff to follow her.  (ECF
No. 18-2, at 9).  They walked a few paces back together and began
a conversation.  Officer Beall did not order Plaintiff to leave
the mall, advise him that he was under arrest, or order him to put
his hands behind his back.[3]

    After Officer Beall and Plaintiff spoke for a few moments,
Defendant "walked behind [Plaintiff] and said . . . you're under
arrest."[4]  (ECF No. 18-2, at 10).  Plaintiff turned around and
asked: "for what?" (*Id.*).  Defendant struck Plaintiff in the head
with his forearm, put his forearm around Plaintiff's neck, and
choked Plaintiff.  (*Id.*).  Plaintiff said that he could not breathe

---

[3] Officer Beall's deposition testimony suggests that she did
tell Plaintiff to leave, tried to usher him out of the mall, and
that Plaintiff would stop every few steps, turn around, and shout.
(ECF No. 18-3, at 10).  Officer Beall was unsure of what he shouted
or to whom he was speaking.  (*Id.*).

[4] Plaintiff and Officer Beall described Defendant as
effectuating the arrest from behind immediately upon joining them.
(ECF No. 18-2, at 10; ECF No. 18-3, at 13-14).  Defendant described
having a face-to-face conversation about force and race with
Plaintiff before initiating the arrest.  (ECF No. 19, at 14-16).
Officer Beall testified that Plaintiff did not actively or
passively resist arrest (ECF No. 18-3, at 20-21; Defendant
testified that Plaintiff did resist arrest (ECF No. 19, at 16).

and remained standing. Defendant "put more pressure on [Plaintiff's] neck and . . . kept squeezing." (*Id.*). Plaintiff asked, "what's going on" and Officer Beall instructed him to "go down." (*Id.*). Plaintiff went to the ground. As Plaintiff went to the ground, Defendant grabbed Plaintiff's right arm, threw it back, and forcefully put his knee in Plaintiff's back. Defendant handcuffed Plaintiff and pulled Plaintiff to a standing position.

Plaintiff expressed that he had shoulder pain. Defendant did not reply, but Officer Beall arranged for a second set of handcuffs. Defendant declined to handcuff Plaintiff with his arms in front of his body. They continued to speak, and Plaintiff described the conversation:

> Officer Bauer came back over and he said to me, he said you incited a riot. I said no, you did that on your own. I said I didn't do anything. I just said what you did to her was not right. And then he said – he tried to justify, and I'm like, no, that's not right, what you did to that young lady was not right, and he said you're ignorant and I said ignorant, and then he said you people need to learn how to keep your mouth shut and I said us black people and he said yes, and walked back over to where the girl was.

(ECF No. 18-2, at 12). Defendant and another officer drove Plaintiff to the police station. During the drive, Defendant indicated that Plaintiff would "pay because [Plaintiff] made [Defendant] late to go pickup his kids." Plaintiff refused medical treatment during the booking process. The State of Maryland ultimately dismissed the disorderly conduct charge against Plaintiff.

On April 12, 2018, Plaintiff filed the instant complaint and asserted four claims: (1) violation of 42 U.S.C. § 1983 ("Count I"); (2) battery ("Count II"); (3) false arrest ("Count III"); and (4) false imprisonment ("Count IV").  After full briefing, the court granted Defendant's motion to dismiss Counts II through IV because Plaintiff failed to provide timely notice under the Maryland Local Government Tort Claims Act ("LGTCA").  (ECF No. 9, at 7-15).  Only Count I remains.

On September 10, 2019, Defendant filed the presently pending motion for summary judgment.  (ECF Nos. 18; 19).[5]  Plaintiff responded (ECF No. 22), and Defendant replied (ECF No. 23).[6]

## II.  Standard of Review

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Summary judgment is

---

[5] Defendant filed ECF No. 19 to correct ECF No. 18-4. Defendant identified ECF No. 19 as correspondence correcting an earlier submission but the document does not contain any correspondence.  ECF No. 18-4 provides, in numerical and sequential order, the first 41 pages of Defendant's deposition.  ECF No. 19 omits some of the pages contained in ECF No. 18-4 and provides additional pages of the deposition.  The court must refer to both to reference the complete deposition transcript.

[6] Three of Plaintiff's exhibits are duplicative of Defendant's exhibits.  *Compare* ECF No. 22-1 *with* ECF No. 18-2; *compare* ECF No. 22-2 *with* ECF Nos. 18-4; 19; *compare* ECF No. 22-4 *with* ECF No. 18-3.  These are the transcripts of Defendant's, Plaintiff's, and Officer Beall's depositions.  The opinion will reference Defendant's exhibits when referencing the deposition transcripts.

inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (2001).  The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 251-22.  Instead, the evidentiary materials must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*  The facts are to be taken in the light most favorable to the party opposing summary judgment, the non-moving party

### III. Analysis

Plaintiff's § 1983 claim alleges violation of the Fourth and Fourteenth Amendments to the United States Constitution.  There are two aspects to Count I.  First, Plaintiff contends that Defendant arrested him without probable cause violating his right to be from an unreasonable search and seizure of his person. (ECF No. 1, ¶ 27).  Second, Plaintiff contends that Defendant used excessive force. (*Id.*).  Defendant contends that he "had probable cause to arrest [Plaintiff] for disorderly conduct" and that he "has qualified immunity from the [excessive force claim] because it is not clearly established that the method he used was unconstitutional." (ECF No. 18-1, at 5).

### A.   False Arrest

Plaintiff alleges that he was arrested without a warrant and without probable cause in violation of the Fourth Amendment, which protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures[.]" U.S. Const. amend. IV.  Defendant contends that he had probable cause to arrest Plaintiff for disorderly conduct (ECF No. 18-1, at 5-8), and argues that probable cause defeats a retaliatory arrest claim (ECF No. 23, at 2-5).  Although Plaintiff did not raise a retaliatory arrest claim or allege a First Amendment violation in Count I, he maintains that he "had an absolute right [to criticize verbally]" Defendant's conduct and argues that Defendant's "claimed justification for the arrest . . . is a matter of disputed fact." (ECF No. 22, at 15-18).

"Under the Fourth Amendment, a warrantless arrest is an unreasonable seizure unless there is probable cause to believe that a criminal offense has been or is being committed." *United States v. Johnson*, 599 F.3d 339, 346 (4th Cir. 2010).  The standard is objective; probable cause "exists when, 'at the time the arrest occurs, the facts and circumstances within the officer's knowledge would warrant the belief of a prudent person that the arrestee had committed or was committing an offense.'"  *Id.* (quoting *United States v. Manbeck*, 744 F.2d 360, 376 (4th Cir. 1984)).  "Probable cause is determined by a 'totality-of-the-circumstances'

7

approach." *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017) (citing *Illinois v. Gates*, 462 U.S. 213, 230 (1983)).  The probable cause inquiry "turns on two factors: 'the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.'"  *Id.* (quoting *Graham v. Gagnon*, 831 F.3d 176, 184 (4th Cir. 2016)).  For the first factor, courts "look to the information available to the officer on the scene at the time," but "apply an objective test to determine whether a reasonably prudent officer with that information would have thought that probable cause existed for the arrest."  *Hupp v. Cook*, 931 F.3d 307, 318 (4th Cir. 2019).  For the second factor, courts look to the applicable criminal statute.  *Id.*

Disorderly conduct is a misdemeanor under Maryland criminal law.  Md. Code. Ann., Crim.Law § 10-201(d).  Section 10-201(c) outlines the prohibitions and provides, as relevant here:

> (1)   A person may not willfully and without lawful purpose obstruct or hinder the free passage of another in a public place or on a public conveyance.
>
> (2)   A person may not willfully act in a disorderly manner that disturbs the public peace.
>
> (3)   A person may not willfully fail to obey a reasonable and lawful order that a law enforcement officer makes to prevent a disturbance to the public peace.

The United States Court of Appeals for the Fourth Circuit outlined the "contours" of Section 10-201(c)(3) in *Ross v. Early*, 746 F.3d 546, 561 (4th Cir. 2014):

[Section 10-201(c)(3)] applies to offenders who "willfully fail to obey a reasonable and lawful order of a law enforcement officer, made to prevent a disturbance of the public peace." *Att'y Grievance Comm'n of Maryland v. Mahone*, 435 Md. 84, 76 A.3d 1198, 1210 (2013). Under this subsection, the "'failure to obey a policeman's command to move on when not to do so may endanger the public peace, amounts to disorderly conduct'" in violation of Maryland law. *Id.* (citation omitted). This crime "is predicated on the law enforcement officer issuing a reasonable and lawful order," *Polk v. State*, 378 Md. 1, 835 A.2d 575, 580 n.3 (2003) (internal quotation marks omitted), and as such, the command "cannot be purely arbitrary and . . . not calculated in any way to promote the public order." *Mahone*, 76 A.3d at 1211 (internal quotation marks omitted).

Defendant argues that he had probable cause to arrest Plaintiff because he observed Plaintiff "in a public place, yelling at the police for arresting someone, and refusing multiple times to follow lawful orders to leave the mall." (ECF No. 18-1, at 6). Defendant ties his probable cause argument to subsection (2), disturbing the public peace, and subsection (3), failing to obey a reasonable and lawful order, of Section 10-201(c). (*Id.*, at 6-7). In response, Plaintiff emphasizes Defendant's deposition testimony that Plaintiff's "conduct up to, and including, the period of time when [Plaintiff] was speaking with Officer Beall was lawful." (ECF No. 22, at 17). Plaintiff also underscores Defendant's position "that the allegedly disorderly conduct manifested when [Defendant] subsequently approached [Plaintiff] and sought to engage him in some conversation." (*Id.*). Plaintiff notes that there is a dispute of fact regarding that conversation. (*Id.*, at 17-18). In reply, Defendant questions Plaintiff's

reliance on Defendant's initial intention not to arrest Plaintiff and focuses on Plaintiff's failure to obey his orders. (ECF No. 23, at 2-5).

There is a dispute of material fact that precludes granting summary judgment on this claim. Construing the facts in Plaintiff's favor, Defendant would lack probable cause to arrest Plaintiff for disorderly conduct under either subsection (2) or subsection (3). First, according to Plaintiff's account, Plaintiff did not act in a disorderly manner. Plaintiff testified at his deposition that he objected loudly to Defendant's actions "to convey what [he] had to say[,]" but that he "[was not] screaming at the top of [his] lungs." (ECF No. 18-2, at 8). He also testified that a crowd already existed, and his actions did not draw the crowd. At Defendant's deposition, Defendant agreed that Plaintiff "[had not] done anything contrary to Maryland state law[]" "when [Defendant] asked Officer Beall to go over and talk to him[.]"[7] (ECF No. 19, at 13). Once Officer Beall and Plaintiff began their conversation, further genuine disputes of material

---

[7] This testimony seems to suggest that Plaintiff had not willfully acted in a disorderly manner when Defendant asked Officer Beall to speak with him. Defendant's reply, and focus on his initial intention not to arrest Plaintiff, seems to highlight that Plaintiff failed to obey orders both before and after speaking with Officer Beall. That is a matter of disputed fact. Plaintiff's deposition testimony indicated that Officer Beall did not order him to leave the mall and that Defendant arrested him immediately upon joining the conversation – foreclosing the opportunity to order him to leave the mall again.

fact exist regarding Plaintiff's conduct; Officer Beall and Plaintiff testified that the arrest occurred immediately whereas Defendant testified that a conversation occurred, Plaintiff yelled, and Defendant saw "people deviate from their normal activity" and saw "[a] crowd was forming[.]" (ECF No. 18-2, at 10; ECF No. 18-3, at 13-14; ECF No. 19, at 14-16). Viewing the facts in Plaintiff's favor, Defendant lacked probable cause to arrest him for disorderly conduct both before and after his conversation with Officer Beall.

Second, the evidence would support a finding that Plaintiff did not willfully fail to obey a reasonable and lawful order that a law enforcement officer made to prevent a disturbance to the public peace. According to Plaintiff, only Defendant and the security guard ordered him to leave the mall and they only did so prior to his conversation with Officer Beall. The above conclusion that Plaintiff did not engage in disorderly conduct compels the conclusion that Plaintiff did not fail to obey a lawful order because Section 10-201(c)(3) "requires a public disturbance." *In re Micah M.*, 2016 WL 1733272, at *5 (Md.App. Apr. 29, 2016); *see also Spry v. State*, 396 Md. 682, 691-92 (2007) ("The gist of the crime of disorderly conduct . . . is the doing or saying, or both, of that which offends, disturbs, incites, or tends to incite, a number of people gathered in the same area."); *Okwa v. Harper*, 360 Md. 161, 185 (2000) ("When a citizen disobeys a reasonable and

lawful request by a police officer 'fairly made to prevent a disturbance to the public peace' that citizen has engaged in disorderly conduct.  The police officer's request, however, must be intended to prevent someone from inciting or offending others. It may not be an arbitrary directive.") (citations omitted); *United States v. Lee*, No. 08-0485-DKC, 2009 WL 774424, at *1 (D.Md. Mar. 20, 2009) ("[I]t depends very much on the circumstances as to whether any order is – or is not – arbitrary, and whether the order is designed to prevent the disturbance of the public peace.").

Defendant's discussion of retaliatory arrest claims warrants brief mention, even though Plaintiff did not assert a First Amendment violation or a retaliatory arrest claim.  "Official reprisal for protected speech offends the Constitution because it threatens to inhibit exercise of the protected right and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out[.]" *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (alterations, citations, and quotation marks omitted).

The Supreme Court of the United States recently considered "whether probable cause to make an arrest defeats a claim that the arrest was in retaliation for speech protected by the First Amendment." *Nieves v. Bartlett*, 139 S.Ct. 1715, 1721 (2019).  The Court explained the "complex" causal inquiry necessary for

12

retaliatory arrest claims, analogizing to retaliatory prosecution claims and its earlier decision in *Hartman v. Moore*. *Id.* at 1722-25. "*Hartman* adopted the requirement that plaintiffs plead and prove the absence of probable cause for the underlying criminal charge[]" when advancing a retaliatory prosecution claim. *Id.* at 1723. *Nieves* applied *Hartman*'s rule to retaliatory arrest claims with a "narrow qualification" explained:

> Although probable cause should generally defeat a retaliatory arrest claim, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so. In such cases, an unyielding requirement to show the absence of probable cause could pose "a risk that some police officers may exploit the arrest power as a means of suppressing speech." *Lozman* [*v. Riviera Beach*, 585 U.S., at ----, 138 S.Ct. 1945, 1953-1954 (2018)].

> When § 1983 was adopted, officers were generally privileged to make warrantless arrests for misdemeanors only in limited circumstances. See Restatement of Torts § 121, Comments *e*, *h*, at 262-263. Today, however, "statutes in all 50 states and the District of Columbia permit warrantless misdemeanor arrests" in a much wider range of situations – often whenever officers have probable cause for "even a very minor criminal offense." *Atwater* [*v. Lago Vista*, 532 U.S. 318, 344-45, 354, 121 S.Ct. 1536 (2001)]; *see id.*, at 255-360, 121 S.Ct. 1536 (listing state statutes).

> For example, at many intersections, jaywalking is endemic but rarely results in arrest. If an individual who has been vocally complaining about police conduct is arrested for jaywalking at such an intersection, it would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory arrest claim on the ground that were was undoubted probable cause for the arrest. In such a case, because probable cause does little to prove or disprove the causal

connection between animus and injury, applying *Hartman*'s rule would come at the expense of *Hartman*'s logic.

For those reasons, we conclude that the no-probable cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in same sort of protected speech had not been. Cf. *United States v. Armstrong*, 517 U.S. 456, 465, 116 S.Ct. 1480, 132 L.Ed.2d 687 (1996). That showing addresses *Hartman*'s causal concern by helping to establish that "non-retaliatory grounds [we]re in fact insufficient to provoke the adverse consequences." 547 U.S. at 256, 126 S.Ct. 1695. And like a probable cause analysis, it provides an objective inquiry that avoids the significant problems that would arise from reviewing police conduct under a purely subjective standard. Because this inquiry is objective, the statements and motivations of the particular arresting officer are "irrelevant" at this stage. *Devenpeck* [*v. Alford*, 543 U.S. 146, 153, 125 S.Ct. 588 (2004)]. After making the required showing, the plaintiff's claim may proceed in the same manner as claims where the plaintiff has met the threshold showing of the absence of probable cause. See *Lozman*, 585 U.S., at ----, 138 S.Ct., at 1952-1953.

*Id.* at 1727.

Assuming *arguendo* that probable cause existed for Defendant to arrest Plaintiff for disorderly conduct, this case nonetheless falls squarely within *Nieves*'s "narrow qualification." Construing the facts in the light most favorable to Plaintiff, a crowd already existed when Plaintiff approached the scene and others in the crowd also criticized Defendant's arrest of Ms. Branch. (ECF No. 18-2, at 6-7). Plaintiff recalled that other people, including Ms. Branch's boyfriend, commented, "that's not right" and asked, "why did [Defendant] do that." (*Id.*, at 7). Notably, however, Plaintiff does not identify any other crowd member that commented

14

on Ms. Branch's race.  Only Plaintiff did so, distinguishing his speech from the speech of the others criticizing Defendant.

Defendant contends that Plaintiff "has presented no evidence . . . that he was arrested when other similarly situated individuals were not[,]" elaborating that instead, "the evidence is that [Plaintiff] willfully ignored a lawful order from a uniformed police officer to leave the area and spoke in a manner . . . that caused public patrons of the mall to stop and observe." (ECF No. 23, at 5).  The facts, construed in Plaintiff's favor, do not support Defendant's contentions.  Defendant's deposition testimony (ECF No. 19, at 21-22), and the Anne Arundel County Police computer aided dispatch report ("CAD report") (ECF No. 22-3, at 6), indicate that only "one adult male" was arrested and transported to the station.  Summary judgment will be denied on the arrest claim.

**B.  Excessive Force**

Plaintiff also alleges that Defendant violated the Fourth Amendment by using excessive force when arresting him.  Defendant contends that even if the force employed was unreasonable, summary judgment is nevertheless appropriate because he is entitled to qualified immunity.

"Qualified immunity shields police officers who commit constitutional violations from liability when, based on 'clearly established law,' they 'could reasonably believe that their

actions were lawful.'" *Estate of Jones v. City of Martinsburg*, 961 F.3d 661, 667 (4th Cir. 2020) (quoting *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 537-38 (4th Cir. 2017)).   The qualified immunity analysis requires courts to conduct a two-step inquiry, asking, in either order: "(1) whether a constitutional violation occurred; and (2) whether the right was clearly established at the time of the violation[.]" *Id*.   Defendant's motion for summary judgment focuses on the second inquiry only, conceding that the forced used was unreasonable for purposes of the motion.   (ECF No. 18-1, at 8-12; ECF No. 23, at 6 ("[Defendant] has not moved for summary judgment on the grounds that the force he used was objectively reasonable.   Instead, [Defendant] argues that even if the force he used was unreasonable (and happened just as [Plaintiff] suggests), he is entitled to qualified immunity for the use because the law is not clearly established.")).

"To determine whether [the] right was clearly established, [courts] must first define the right at the 'appropriate level of specificity.'" *Estate of* Jones, 961 F.3d at 667 (quoting *Booker*, 855 F.3d at 539)).   Construing the facts in the light most favorable to Plaintiff, Defendant approached Plaintiff from behind, stated Plaintiff was under arrest, immediately struck Plaintiff in the head with his forearm, put his forearm around Plaintiff's neck, and choked Plaintiff.   (ECF No. 18-2, at 10).   Defendant then continued to choke Plaintiff to get Plaintiff to

the ground, pulled Plaintiff's right arm behind Plaintiff's back, and shoved his knee into Plaintiff's back. (*Id.*). Plaintiff did not actively or passively resist the arrest. (ECF No. 18-3, at 20-21).

At the time of Defendant's conduct, it was clearly established that a police officer's tackling to the ground a non-threatening, nonresisting, misdemeanor suspect violates the Fourth Amendment. *See Kane v. Hargis*, 987 F.2d 1005, 1008 (4th Cir. 1993) (per curiam) (holding that "[i]t would have been apparent to a reasonable officer" that "it was unreasonable to push [an arrestee's face into the pavement with such force that her teeth cracked[]" even if the arrestee was unrestrained and initially resisted arrest when the arrestee "did not pose a threat"); *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994); *Jones v. Buchanan*, 325 F.3d 520, 532 (4th Cir. 2003) ("[O]fficers using unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen, do not act in an objectively reasonable manner and, thus, are not entitled to qualified immunity."); *Barfield v. Kershaw Cty. Sheriff's Office*, 638 F.App'x 196, 203 (4th Cir. 2016) ("[A] police officer's unprovoked tackling of a nonthreatening, nonresisting misdemeanor suspect violates the Fourth Amendment."); *Moore v. Peitzmeier*, No. 18-2151-TDC, 2020 QWL 94467, at *11 (D.Md. Jan. 7, 2020) ("[T]here is controlling precedent holding that assaulting an unarmed, subdued suspect or arrestee violates the Fourth Amendment.").

17

Although Plaintiff was not secured when Defendant initiated the take down, Plaintiff did not resist arrest.  Defendant contends that he "had no way to know if [Plaintiff] was armed until they had secured and patted him down." (ECF No. 18-1, at 12; *see also* ECF No. 23, at 6).  This contention is unpersuasive given that there has been no suggestion that Plaintiff was armed or that Defendant suspected he might be.  *See Rowland*, 41 F.3d at 174 ("[Plaintiff] posed no threat to the office or anyone else.  There never has been any suggestion that [Plaintiff] was armed or that [Defendant] suspected he might be.").

Defendant argues "that taking down a subject from behind with an arm across the neck" is not clearly established as unconstitutional.  (ECF No. 18-1, at 8-12).  Defendant relies primarily on three cases to support his position: (1) *Carter v. Jess*, 179 F.Supp.2d 534 (D.Md. 2001); (2) *Post v. City of Ft. Lauderdale*, 7 F.3d 1552 (11th Cir. 1993); and (3) *Wesson v. Oglesby*, 910 F.2d 278 (5th Cir. 1990).  Each is distinguishable.

*Carter* is distinguishable because the plaintiff there "attempt[ed] to pull away, twisting and turning his body to avoid the handcuffs." 179 F.Supp.2d at 547.  In response to the *Carter* plaintiff's struggle, an officer "put[] an arm around [the plaintiff's] chest and neck[]" and two other officers "attempt[ed] to bring [the plaintiff] to his knees." *Id*.  The *Carter* plaintiff

"continue[d] to twist his body, apparently resisting the efforts to bring him to the ground." *Id.*

*Post* and *Wesson* are similarly unavailing.  The *Post* plaintiff also resisted arrest, raising his hands to one of the arresting police officers without having been told to do so.  7 F.3d at 1559-1560.  Moreover, "[b]efore the night of the arrests, another officer told [the arresting police officer] that he had recently arrested [the *Post* plaintiff] for resisting arrest and that [the *Post* plaintiff's] resistance had been violent."  *Id.* at 1559.  Finally, the *Wesson* court accepted for purposes of review the plaintiff's contention that a chokehold was excessive, unreasonable, and malicious but rejected the plaintiff's argument that "the intentional application of any force beyond *de minimis* is unconstitutional."  910 F.2d. at 283.

The flaw with Defendant's various arguments lies with his characterization of Plaintiff as "non-compliant."  (ECF No. 18-1, at 12; ECF No. 23, at 6).  Defendant attempts to distinguish *Barfield v. Kershaw County Sheriff's Office*, 638 F.App'x 196 (4th Cir. 2016) by arguing that the *Barfield* plaintiff voluntarily complied whereas Plaintiff here did not.  (ECF No. 23, at 6-7).  Defendant fails to construe the facts in Plaintiff's favor, and doing so reveals that Plaintiff did not actively or passively resist arrest or otherwise disregard Defendant's orders during the

arrest.   Summary  judgment  will  be  denied  on  the  excessive  force claim.

## IV.   Conclusion

For  the  foregoing  reasons,  the  motion  for  summary  judgment filed by Defendant will be denied.   A separate order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge